UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

STANLEY WALTER SEPTIC
TANK CLEANING, LLC,

      Plaintiff,

      v.                                            Case No. 12-C-0317

MACK TRUCKS INC.,

      Defendant.

---

DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION
FOR JUDGMENT, COSTS, AND ATTORNEY'S FEES (DOC. 84)

In this case, the jury found that Mack Trucks Inc. violated Wis. Stat. § 218.171 and it was not impossible for Mack to have supplied a replacement vehicle for Stanley Walter Septic Tank Cleaning, LLC's lemon within the statutory thirty-day deadline. Prior to trial, the parties stipulated that if the jury found in Stanley Walter's favor, its damages would equal $113,193.00 (the vehicle's purchase price) plus collateral costs of $293.64 and "[r]easonable attorney's fees and costs to be determined by the court." (Doc. 15, ¶ 7.) Stanley Walter now moves for an award of those additional costs and attorney's fees, plus prejudgment interest.

Mack does not object to Stanley Walter's costs or contend that some of its attorney's fees are warranted. Instead, it opposes an award for prejudgment interest and contends that the court should award attorney's fees in an amount that is substantially lower than requested.

A.      Statutory Costs

In its brief, Stanley Walter lists certain statutory costs it is seeking under Wis. Stat. § 814.01, such as the filing fee, service fees, witness fees, and deposition transcript costs. Mack does not object to these amounts which the court finds reimbursable. Therefore, $3,760.45 in statutory costs will be awarded as requested.

B.      Litigation Costs

Citing Wisconsin case law, Stanley Walter seeks additional costs such as a witness search fee, mileage, and parking charges, contending payment of these expenses will make it whole. Again, Mack does not object. Therefore, the court will award $1,907.74 to Stanley Walter in litigation costs as requested.

C.      Attorney's Fees

As required by Wis. Stat. § 218.0171(7) and as agreed by Mack, Stanley Walter, as the prevailing party, is entitled to reasonable attorney's fees. However, the parties disagree as to what constitutes "reasonable" fees in this case.

The attorney's fees issue in this case is determined by Wisconsin law; neither party suggests otherwise. In Wisconsin, a reasonable fee award is determined using the lodestar methodology, i.e., beginning by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶ 45, 308 Wis. 2d 103, ¶ 45, 746 N.W.2d 762, ¶ 45; *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶¶ 24–30, 275 Wis. 2d 1, ¶¶ 24–30, 683 N.W.2d 776, ¶¶ 24–30. The court may adjust the numbers upward or downward based on Wisconsin Supreme Court Rule 20:1.5(a). *Stuart*, 2008 WI 22, ¶ 45; *Kolupar*, 2004 WI 112, ¶¶ 24–30. In 2001, the Wisconsin legislature enacted Wis. Stat. § 814.045 to provide

2

guidelines for determining reasonableness of attorney's fees under fee-shifting statutes like the Wisconsin Lemon Law. The factors set forth in § 814.045(1) include those set forth in Wisconsin Supreme Court Rule 20:1.5(a), *compare* Wis. Stat. § 814.045(1) *with* Wis. S. Ct. Rule 20:1.5(a), which have been used by prior courts in determining reasonableness of fees. Those factors include, among others, the time and labor required, the novelty and difficulty of the questions involved, the skill necessary to perform the legal service properly, the likelihood that this particular employment precluded other employment by the lawyer, the fee customarily charged in the locality for similar services, the amount involved, the results obtained, the experience of the lawyer, whether the fee was fixed or contingent, and the fee awards in similar cases. The goal is to "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992); *James Michael Leasing Co. v. PACCAR, Inc.*, No. 110C-0747, slip op. at 5-6 (E.D. Wis. Oct. 24, 2013) (Adelman, J.). And because of the delay in payment, counsel should be compensated at the present rate rather than the rate when the work was performed. *See Missouri v. Jenkins*, 491 U.S. 274, 282–84, 109 S. Ct. 2463 (1989). Hence, the court has discretion in fashioning a reasonable attorney's fee award. *Kolupar*, 2004 WI 112, ¶ 22.

In the initial motion documents, Stanley Walter asks for an award of the following fees:

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Vincent Megna | 123.10 | $395.00 | $48,624.50 |
| Vincent Megna (trial) | 19.50 | $415.00 | $8,092.50 |
| Timothy Aiken | 12.75 | $490.00 | $6,247.50 |
| Susan Grzeskowiak | 363.75 | $345.00 | $125,493.75 |
| Susan Grzeskowiak (trial) | 20.45 | $365.00 | $7,464.25 |
| Erin Kandziora | 43.80 | $155.00 | $6,789.00 |
| TOTAL | 583.35 | | $202,711.50 |

In its reply brief, Stanley Walter seeks payment of additional fees for work conducted subsequent to the initial fee application:

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Vincent Megna | 1.30 | $395.00 | $513.50 |
| Timothy Aiken | 0.75 | $490.00 | $367.50 |
| Susan Grzekowiak | 17.85 | $345.00 | $6,158.25 |
| Erin Kandziora | 0.95 | $155.00 | $147.25 |

Mack objects regarding both parts of the lodestar calculation contending that the hourly rates of all individuals are unreasonably high and that the number of hours claimed for various tasks are unreasonably excessive. Additionally, Mack maintains that Stanley Walter's attorneys overstaffed the case and billed for tasks that could have been assigned to administrative assistants.

The court has reviewed both parties' briefs and affidavits and concludes that the non-trial rates of Stanley Walter's attorneys are reasonable. Stanley Walter's counsel indicates that those rates are his firm's standard hourly billing rates for automobile warranty

enforcement cases.[1] (Doc. 86, ¶ 9.) And in light of Wis. Stat. § 814.045(1), no downward adjustment will be made. Stanley Walter's attorneys are experienced Lemon-Law litigators, with the skill and ability necessary to litigate and try such cases and with prior knowledge that may have saved time. This case involved novel issues respecting an impossibility defense, a specialty made-to-order vehicle, the time frame for delivering a replacement vehicle when the manufacturer could not possibly provide a replacement within thirty days, and possible frustration or interference with replacement by the consumer. (As noted by this court in its summary judgment decision, no Wisconsin cases had dealt specifically with the theory of impossibility in providing a comparable replacement vehicle within the statutory period.) Damages recoverable for a Mack Truck exceeded those recoverable for an average consumer's vehicle (such as a mass-produced sedan). Stanley Walter's attorneys obtained a good result for their client. And, importantly, they say they took the case on a contingency basis, meaning that they bore not only a risk of no recovery but also the burden of a significant delay in any payment.

Also, importantly, these attorneys' fees are in line with fees customarily charged in this locality for similar services by comparable attorneys, as exhibited by the affidavits and cases submitted by Stanley Walter. Megna has been licensed to practice since 1973 and has been representing consumers in automobile litigation since 1990. (Doc. 86, ¶¶ 11, 12.) Grzeskowiak has been licensed since 1998 and has concentrated her practice in automobile litigation since 2000. (*Id.*) Attorney Lawrence Alan Towers, who has practiced for over twenty years and whose practice in the Milwaukee area is largely concentrated in

---

[1] Mack contends that Stanley Walter should have to present a fee agreement with some client to meet its burden of proof as to its rates (*see* Doc. 96 at 8), but the court does not find that more than Megna's affidavit is required.

5

Lemon Law and automobile warranty litigation indicates that his hourly billing rate is $350 per hour, comparable to Grzeskowiak's rate. (*See* Doc. 88.) Attorney Todd Gadtke, who is licensed to practice in Minnesota and Wisconsin and has handled numerous Lemon Law cases since 1998, charges $375 per hour, a rate between Grezeskowiak's and Megna's rates. (*See* Doc. 89.) Attorney Gadtke's paralegal for Lemon Law cases bills at a rate of $165 per hour. (*See* Doc. 89, ¶ 7.)

In 2010, Judge Michael Bohren of the Waukesha County Circuit Court approved non-trial rates of Megna and Grzeskowiak at $340 and $295, respectively, $450 per hour for Aiken, and $105 for a paralegal at their firm. Five years of inflation have occurred since that award. (Doc. 86 Ex. F.) In 2011, Judge Foust in Dane County Circuit Court approved hourly non-trial rates of $355 for Megna, $310 for Grzeskowiak, and $400 for Aiken, and trial rates of $345 for Grzeskowiak and $500 for Aiken. (Doc. 86 Ex. I.) In October 2013, Judge Adelman approved hourly fees of $375 for Megna, $340 for Grzeskowiak, and $125 for their paralegal. (Doc. 86 Ex. G.) And in September 2014, Judge Raymond Huber of the Waupaca County Circuit Court approved hourly rates of $395 for Megna, $345 for Grzeskowiak, and $155 for paralegal Kandziora—the same as sought in this case—and $400 per hour for Aiken. (Doc. 86 Ex. H.) Though Aiken's sought-after rate in this case is $90 per hour higher than that approved by Judge Huber, he is a named partner at his firm; has over thirty years of experience as an attorney in the Milwaukee area, concentrating on plaintiff's litigation; and defendants in at least two prior cases stipulated to non-trial rates of $450 (in 2008) and $475 (in 2010). Judge Bohren approved $450 per hour (in 2010). Consequently, this court finds Aiken's sought-after rate is in line with prior awards and with the rates of other senior partner attorneys in Milwaukee.

Mack contends that its attorney charged only $200 per hour. But Mack's attorney did not face the risk of no payment if he lost the case, and did not necessarily endure a delay in payment for over three years. In *James Michael Leasing Co.*, slip op. at 8 n.5, Judge Adelman rejected a similar argument by Mack's counsel when his rate was $225 per hour—higher than in this case. Further, it may well be that Lemon-Law defense attorneys charge lower than a market rate to persuade vehicle manufacturers to use their firm again, whereas Lemon-Law plaintiffs may not be repeat clients for their attorneys.

With due regard for the discussion set forth above, the court finds that the non-trial rates of Stanley Walter's attorneys and paralegal are reasonable. However, the court has not been provided any information that supports payment of a higher fee for trial work. Therefore, the court will award fees based on the lower rate.

Next, Mack contends that the hours billed are excessive, in particular that attorneys duplicated work, spent an "astounding" amount of time on the case (Doc. 96 at 9), and billed for work that could have been assigned to non-billable staff. According to Mack, two attorneys at trial were unnecessary. Also, says Mack, Aiken's hours should not be paid at all, as Megna and Grzeskowiak could have handled the case themselves.

The court rejects the bulk of Mack's arguments. Staffing trial with two attorneys was reasonable. Such staffing is common in cases that have been tried in this court. Also, because Megna and Grzeskowiak were trying the case, their joint attendance at pretrial conferences or mediation was not unreasonable. Moreover, Stanley Walter's attorneys may have presented a better case together (through prepping and focusing on particular witnesses, for instance) than if only one attorney staffed the trial. The issues in the summary judgment motions were novel, and more time spent in editing the briefs likely

7

meant a better brief for the court to consider. Having the viewpoint of more than one attorney may have improved oral arguments as well.

As for Aiken's input, the court is persuaded that his assistance and expertise were beneficial for Stanley Walter, and his hours of input (about thirteen) were modest over three years of litigation. The court is mindful that Judge Adelman awarded no fees for Aiken's work in *James Michael Leasing*, finding that the case was "slightly overstaffed" and that it was unreasonable to bring in Aiken at a premium rate when Megna and Grzeskowiak were experienced litigators and experts in this area of law. *James Michael Leasing*, slip op. at 8. However, that assessment is not applicable here.

Mack submits that Stanley Walter's attorneys spent an excessive time responding to Mack's motion for summary judgment and in preparing their own summary judgment motion and brief. But under the local rules each motion required its own briefing, proposed statements of material fact, etc., and the impossibility defense raised by Mack in its motion required substantial attention. And considering the work required to issue a decision on the summary judgment motions, the time spent by Stanley Walter's counsel was not unreasonably large.

Further, Mack contends that Stanley Walter's time entries show duplication of effort in many ways, such as in drafting the lemon law notice and complaint, communicating with defense counsel, and reviewing materials for trial. For instance, Megna presented witness Allen Walter at trial and cross-examined witness Martin Zens, but there are entries for Grzeskowiak related to reviewing materials related to Walter and Zens and entries from Kandziora regarding Walter. (*See* Doc. 96 at 14–15.) However, the court is persuaded that attorneys may share trial preparation work, and the entries plausibly indicate that

8

Grzeskowiak and Kandziora prepared Megna for his trial examinations. For instance, Kandziora's entries reflect work on Walter's testimony then a conference with Megna regarding a "timeline/opening statement/chart" and assisting Megna in preparing for trial. (Doc. 86 Ex. E at 27.) Similarly, Grzeskowiak's entries indicate that she worked on potential questions for Zens (Doc. 86 Ex. E at 26). Thus, she apparently helped prepare Megna for that cross-examination. Hence, the court finds such collaboration for trial acceptable.

Finally, as to whether Stanley Walter's attorneys billed for activities that non-billable staff may have been able to do, the court is for the most part unpersuaded by Mack's arguments. In particular, the court believes it reasonable for attorneys to e-file their own documents in the court's CM/ECF system. While some attorneys may delegate that task to secretaries or paralegals, the ultimate responsibility for those filings falls on the attorney. The attorney is entitled to make sure that e-filing is done on time, that the correct documents are filed, that correct docket entries are made, and that the court's e-filing rules are followed. A similar responsibility exists for calendaring deadlines. And a paralegal's time billed for assembling hard copies as required by the court and drafting transmittal letters is not unreasonable, either. The paralegal may know the case better than a secretary, have greater familiarity with court requirements, and have placed on her a greater responsibility for meeting those requirements.

However, on one small billing entry, the court agrees with Mack. Attorney Grzeskowiak billed 0.5 hours on June 3, 2013, for printing certain Mack documents from the CM/ECF system. *That* task more properly falls within the duties of non-billable staff. Therefore, the court will reduce her hours by 0.5.

Therefore, the court will award the following fees regarding the time originally sought:

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Vincent Megna | 142.60 | $395.00 | $56,327.00 |
| Timothy Aiken | 12.75 | $490.00 | $6,247.50 |
| Susan Grzeskowiak | 383.70 | $345.00 | $132,376.50 |
| Erin Kandziora | 43.80 | $155.00 | $6,789.00 |
| TOTAL | 582.85 | | $201,740.00 |

Adding to that time the amounts expended post-application, the totals become:

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Vincent Megna | 143.90 | $395.00 | $56,840.50 |
| Timothy Aiken | 13.50 | $490.00 | $6,615.00 |
| Susan Grzeskowiak | 401.55 | $345.00 | $138,534.75 |
| Erin Kandziora | 44.75 | $155.00 | $6,936.25 |
| TOTAL | 603.70 | | $208,926.50 |

D.    Prejudgment Interest

Stanley Walter seeks prejudgment interest at the rate of five percent from the date the case was filed, March 12, 2012, or, alternatively, from the date of the stipulation of damages, January 8, 2013. Mack opposes the request on the ground that through the parties' stipulation of January 8, 2013, Stanley Walter waived any right to prejudgment interest. However, Mack adds that in the event the court awards prejudgment interest, the applicable start date would be the date of the stipulation rather than the filing of the case.

Under Wisconsin common law, prejudgment interest at the rate of five percent is recoverable when there is a "'reasonably certain standard of measurement by the correct

application of which one can ascertain the amount he owes.'" *Olguin v. Allstate Ins. Co.*, 71 Wis. 2d 160, 168, 237 N.W.2d 694 (1976) (quoting *Laycock v. Parker*, 103 Wis. 161, 186, 79 N.W. 327, 335 (1899)). Stated otherwise, prejudgment interest is awarded when the amount owed is readily liquidated, liquidable, or determinable. *Johnson v. Pearson Agri-Sys., Inc.*, 119 Wis. 2d 766, 771, 350 N.W.2d 127 (1984); *Erickson by Wightman v. Gunderson*, 183 Wis. 2d 106, 121, 515 N.W.2d 293 (Ct. App. 1994). The main rationales for the rule are the time-value of money and that if the amount is liquidated or determinable by reference to some objective standard, the defendant can avoid accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages. *Johnson*, 119 Wis. 2d at 771–72.

However, where parties stipulate to damages, any claim to prejudgment interest must be expressly reserved or clearly excluded from the stipulation.

> In the absence of a stipulation that is clearly limited to settling the dispute only as to the principal amount due or absent some other express reservation of the claim for pre-verdict interest in the face of a stipulation which purports to resolve the entire damage question, the interest claim is disposed of by the stipulation.

*Wyandotte Chems. Corp. v. Royal Elec. Mfg. Co.*, 66 Wis. 2d 577, 591, 225 N.W.2d 648, 656 (1975). Prejudgment interest is considered an item of compensatory damages rather than a separate penalty. *Id.* at 590. *Wyandotte Chemicals* involved a stipulation that was not limited to specific items of damage, but instead "by its terms purported to resolve the entire issue of compensatory damages." *Id.* The Supreme Court of Wisconsin held that the claim for prejudgment interest was properly denied, notwithstanding that the plaintiff had demanded prejudgment interest in the complaint. *Id.* at 588–92.

Here, the pertinent portions of the parties' stipulation reads:

11

> 7. That this action shall continue regarding the plaintiff's claims that the defendant violated the provisions of §218.0171, Wis. Stats. In the event that the plaintiff prevails in establishing that the defendant violated §218.0171, Wis. Stats., the plaintiff's damages will be limited to the following:
>    a. Agreed purchase price of $113,193.00.
>    b. Collateral costs of $293.64.
>    c. Reasonable attorney's fees and costs to be determined by the court.
>
> 8. The parties agree that by entering into this Stipulation neither party waives any of their respective claims, arguments or affirmative defenses regarding compliance with any obligations under the Wisconsin Lemon Law. Any allegations, claims, denials and/or affirmative defenses are hereby preserved.

(Doc. 15, ¶¶ 7, 8.) Stanley Walter argues that it reserved its claim for prejudgment interest through paragraph 8's preservation of allegations and claims. According to Stanley Walter, the allegations and claims in the complaint included a demand for prejudgment interest on all liquidated sums, which paragraph 8 preserves.

The court disagrees. *Wyandotte Chemicals* requires an *express* reservation or a clear limitation of the stipulation to specific items of compensatory damages. But the language in paragraph 7 is broader and purports to resolve the entire issue of compensatory damages: "In the event that the plaintiff prevails . . . the plaintiff's damages will be limited to the following . . . ." The parties did not merely agree that the purchase price was $113,193.00. Instead, they agreed that the plaintiff's total damages would be limited to the specified amounts. And the language in paragraph 8 contains no express reservation of a right to prejudgment interest. Concluding that a claim to prejudgment interest is included would require reference to the complaint. Moreover, paragraph 8 states that neither party waived any claims "regarding compliance with any obligations under the Wisconsin Lemon Law." A right to prejudgment interest based in Wisconsin common law,

12

*see Johnson*, 119 Wis. 2d at 771; *Erickson by Wightman*, 183 Wis. 2d at 121, is distinct from any rights regarding Mack's obligations under the statutory Lemon Law. Therefore, the request for prejudgment interest will be denied.

CONCLUSION

For the reasons set forth above, the judgment will provide for payment by Mack to Stanley Walter of the following amounts, totaling $119,154.83:

- $113,193.00 in damages
- $293.64 in collateral costs
- $3,760.45 in statutory costs
- $1,907.74 in litigation costs

plus attorney's fees in the amount of $208,926.50. No prejudgment interest will be awarded. Thus,

IT IS ORDERED that Stanley Walter's motion for judgment, costs and attorney's fees (Doc. 84) is granted in part and denied in part as described above.

Dated at Milwaukee, Wisconsin, this 28th day of April, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE